UNITED STATES DISTRICT COURT

DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 23-00219-DLF |
| ) | |
| JULIE MILLER ) | |

## SENTENCING MEMORANDUM

Julie Miller planned a vacation that would feature a few days of eating and shopping at a renowned Falls Church, Virginia, Vietnamese/Asian shopping center as an escape from her work as a nail salon technician. When she left Worcester, Massachusetts on January 4, 2021, to travel to her booked hotel in Falls Church, she was only dimly aware that the country was to have a new President in two weeks. She did not know, let alone care, about the Stop the Steal rally or the scheduled electoral count certification that was to take place on January 6th. Two days later, however, Ms. Miller and her co-defendant Long Duong found themselves on an adventure tour., which culminated her decision to illegally enter the United States Capitol building twice, a decision she fully admits was wrong and which now brings her before this Court for sentencing. For the reasons that follow, Ms. Miller submits that the Court should impose a sentence of 12 months' probation and order restitution of $500 to the Architect of the Capitol.

## FACTS

Ms. Miller's history and circumstances are effectively set forth in the Presentence Report. In sum, she is a hardworking 51-year-old immigrant from Vietnam who was the product of a brief relationship between her parents in Vietnam in the waning days of the U.S.'s involvement in that country. Her mother brought the family from Vietnam to New York when Ms. Miller was an adolescent. Ms. Miller did not know her father until she was in her forties and the two independently searched for each other, eventually reuniting.

After completing high school and some college, Ms. Miller moved to Worcester,

Massachusetts, where she raised three children to adulthood, and is still mothering a fourth son who is now a teenager. She has worked as a nail salon technician for the last seventeen years. Her only previous brush with law enforcement occurred amid an acrimonious break-up with her two younger children's father. She has no criminal convictions.

Ms. Miller's participation in the events of January 6 was extremely limited and her actions before, during, and after mitigate her otherwise troublesome decision to go to and enter the Capitol. As the Presentence Report recounts, her involvement stemmed from a preplanned vacation in northern Virginia in early January to shop and eat at the Eden Center in Falls Church, a shopping mall of renown in the Asian community and the Vietnamese community specifically. She chose early January for the vacation because that post-holiday period is the slowest time of the year in the nail salon business and thus a time when many nail salon technicians choose to vacation.

When she left Worcester on January 4, Miller was unaware that Congress was certifying the electoral vote count on January 6, or that the former President had a rally planned for that day. Indeed, as a non-voting lawful permanent resident of the United States she was uninterested in politics. She and Duong only learned about the former President's rally when they observed people congregating in their hotel's lobby in support of the former President. Their decision to drive into Washington DC, to watch the rally themselves, was spur-of-the-moment. After watching the rally, and buying souvenirs including a red, MAGA-style, baseball hat, they moved with the crush of marchers to the Capitol, through the Capitol grounds, and onto the Northwest Terrace. It was then that they peaceably entered the Capitol building, first going in to look at the mess that had been made of the Parliamentarian's office and then, a few minutes later, going in the Senate Wing doors because Ms. Miller wanted to take a selfie with the officers there, which she did:



After returning from the Capitol to their hotel, the pair stayed in Falls Church for two more days while they continued to visit the Eden Center as well as other sites in the northern Virginia area. They did not go back to Washington DC during the remainer of their stay.

While the circumstances of the January 6 events were indeed serious, the unusual features of Ms. Miller's conduct leading up to and at the Capitol that day, especially when paired with her individual history and characteristics, do not lend themselves to a sentence with an

- 3 -

incarceration component.  Rather, a sentence of 12 months' probation with agreed-up restitution satisfies the purposes of sentencing without being overly punitive.  A probationary sentence would provide adequate deterrence to Ms. Miller while avoiding unwarranted sentencing disparities among other January 6 defendants.

## ARGUMENT

### A SENTENCE OF 12 MONTHS' PROBATION IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY

Ms. Miller's Total Offense Level of **two (2)** and resulting guideline sentencing range of **0-6 months** is undisputed. Also undisputed is that the guideline range is in the lowest rung of Zone A, which authorizes a sentence of probation, U.S.S.G. § 5C1.1, an outcome encouraged by the Sentencing Commission. U.S.S.G. § 5C1.1, *comment.* (n.10(a)) ("a sentence other than a sentence of imprisonment" for Zero-Point Offenders who fall in Zones A or B "is generally appropriate"). Here, all of the § 3553(a) factors point toward a sentence of probation for Ms. Miller notwithstanding the government's suggestion that incarceration is necessary.

The nature and circumstances of Ms. Miller's conduct, when considered against her otherwise law-abiding history and circumstances, manifestly support a sentence of probation. This is particularly true when the mitigating facts featuring a total lack of preplanning are paired with the total absence of aggravating factors. For example, it is undisputed that Ms. Miller:

- Did not post anything about President Trump, the Stop the Steal rally, or the upcoming electoral college certification in advance of her trip;

- Did not bring a gas mask, tactical gear, or weapons;

- Did not encourage others to go to the Capitol or, once on the grounds, to go inside;

- Did not go inside the Capitol building immediately, but rather long after the initial breaches and only when it appeared clear that hundreds of others were filtering in and out of the Capitol;

- Did not participate in violence, property destruction, taunting or otherwise impeding

- 4 -

- officers in their work;

- Did not post her activities on social media or otherwise laud the January 6 events to any other persons;

- Did not destroy evidence or otherwise obstruct investigations, but instead fully cooperated with law enforcement; and

- Has been trouble-free since the January 6 event and in compliance with the strictures of her pretrial conditions.

Indeed, the appropriateness of such a sentence is patent when measured against other cases featuring more egregious and aggravating conduct considered by the Court when fashioning probationary sentences:

- *U.S. v. Scott & Holly Chrisensen*, 1:23-cr-00203-DLF: Husband and Wife codefendants sentenced to 36 months' probation. The Chrisensens were among some of the first rioters to enter, stayed within the Capitol for nearly an hour, demonstrated in the rotunda, wandered the Capitol halls, used the bathroom to wash off chemical spray deployed by police officers, and demonstrated in the Rotunda a second time before exiting; they stayed on the Capitol grounds for another hour and a half.

- *U.S. v. Timothy Allen Hart,* 1:21-cr-00540-DLF: Defendant sentenced to 36 months' probation with 45 days of home detention. Hart was amongst the first people to breach the Capitol grounds perimeter and did so by helping move barricades, then entered the Capitol building for twenty minutes where he was observed smoking marijuana in the Rotunda.

- *US v. Ian Ross Horvath*, 1:22-cr-00344-DLF: Defendant sentenced to 36 months' probation. Horvath entered the Capitol through the Senate Wing Door and proceeded to Crypt and later the Rotunda, staying a total of 30 minutes and sometimes livestreaming. Upon exiting, and after seeing police officers trying to clear the building, Horvath encouraged others to enter, stating "come on in, all are welcome." He later deleted evidence of his presence from his Facebook account.

- *US v. Luis Hallon*, 1:22-cr-00217-DLF: Defendant sentenced to 24 months' probation. Partnered with a member of the Oathkeepers, Hallon traveled from Florida to Washington DC and on January 6th entered through the East side of the Capitol, where he proceeded to the Rotunda where they videoed and photographed violent clashes with police as they demonstrated.

- *US v. Lawrence Ambrose*, 1:22-cr-00302-DLF: Defendant sentenced to 36 months' probation. Ambrose decided to attend the Stop the Steal rally immediately upon hearing about it on the radio. He was among the first couple of hundred people to get to the Capitol and went into the Senate Wing door at 2:24 p.m., before Senators and

Congressmen had been evacuated, because he wanted to "make history." He proceeded to the Rotunda and the Speakers' Lobby where he was fist-pumping before exiting the House door a half-hour later.

- *US v. Marissa Suarez and Patricia Todisco*, 1:21-cr-00205-DLF. The two codefendants were sentenced to 36 months' probation. The pair entered the Capitol through the Senate Wing doors and into offices within while chanting "Stop the Steal." The next day, one of the women texted, "[w]hen we found out pence f**ed us. We all stormed the Capitol building and everyone forced entry and started breaking shit--it was like a scene in a move."

Ms. Miller's conduct ranks below, in some cases far below, the culpability of each of the defendants where this Court has determined a non-incarcerative sentence was warranted. Indeed, the least culpable of the listed cases – perhaps reflected in the lesser 24-month probationary sentence imposed – is Luis Hallon, who (like Ms. Miller) photographed and videoed after entering. But unlike Ms. Miller, Hallon plotted with another in advance to fly from Florida with the express purpose of heeding the former President's call to "Be there. It's going to be wild," and, when inside, was present for violent clashes with police. Ms. Miller's participation, on the other hand, was spur-of-the-moment and she did not observe the violent clashes on the comparatively sedate Northwest Terrace from which Ms. Miller chose to enter.

This Court's probation decisions in the above cases are by no means outliers. Analysis of misdemeanor defendants sentenced by other sessions of the District Court similarly demonstrate a strong preference for probationary sentences for low-level offenders, even where the circumstances and conduct were far more egregious than is present in Ms. Miller's case:

- *United States v. Eliel Rosa*, 21-cr-00068-TNM: Defendant sentenced to 12 months' probation. Rosa accepted responsibility early on, did not pre-plan or coordinate activities, and did not go far into the U.S. Capital building.

- *United States v. Jordan Stotts*, 21-cr-00272-TJK: Defendant sentenced to 24 months' probation where he shouted at MPD officers and posted non-remorseful comments following January 6th.

- *United States v. Julia Sizer*, 21-cr-00621-CRC: Defendant sentenced to 24 months' probation. Sizer was inside the Capitol Building for approximately 2 minutes and she recorded events on her cellphone.

- *United States v. Jacob Lewis*, 21-cr-0100-CRC: Defendant sentenced to 12 months' probation. Lewis traveled from his home in California to Washington DC, entered the Senate Wing doors, and strolled through the Capitol to exit from the South doors. He posted photos from the Capitol grounds on his Instagram account.

- *United States v. Gary Edwards*, 21-cr-00366-JEB: Defendant sentenced to 12 months' probation. Edwards was inside the Capitol building for approximately 24 minutes and during his stay in the Capitol entered an office.

- *United States v. Douglas F. Macrae*, 22-cr-00181-JEB: Defendant sentenced to 12 months' probation. Macrae entered the Capitol building while filming and taking pictures of the chaos surrounding him, which he posted online, and boasted in a caption on Facebook "I made it deep into the Capitol Building."

- *United States v. Paula Conlon*, 22-00171-JMC: Defendant sentenced to 12 months' probation. Conlon was inside the Capitol building for approximately 3 minutes, where she posted comments & photos to social media. After exiting, she is seen telling police in tactical gear to "back off."

Like this Court's sentencing decisions, these sentences reflect a proportionality in sentencing that is essential to separating lower-level offenders from those more culpable participants. Ms. Miller's actions most closely resembles Edwards' conduct (although Ms. Miller's stay inside the Capitol was far briefer), Macrae's conduct (although Ms. Miller did not boast or even post online about her entrance into the Capitol), and Conlon (although Ms. Miller did not taunt or even engage police other than to take a smiling selfie).

      Against this backdrop, the government's sentencing recommendation of imprisonment, even for as little as fourteen days as it suggests, is astonishingly harsh and unwarranted given Ms. Miller's actual conduct and culpability. It proposes to punish her more harshly than persons who clearly engaged in more preplanning, exhibited a more involved role in the riot, and who continued to extoll the virtues of the attack in its aftermath. Indeed, two of the three cases it cites, *U.S. v. Matthew Buckler*, Criminal No. 22-cr-00162-TNM, and *U.S. v. Zacharey Martin, et al.*

*(Michael and Stephen Quick)*, Criminal No. 21-00201-DLF, both involve significant preplanning before entrance into the Capitol and in any event support the defendant's position that no incarceration is warranted where none of the five (four codefendants in *Martin*, one in *Buckler*) were sentenced to jail. The third, *U.S. v. Jon Heneghan and Carol Kicinski*, Criminal No. 22-00061-RBW, involves far more egregious facts. There, the couple, who had traveled from Florida by plane January 5 with the express purpose of joining the former President, entered the Senate Wing Door much earlier in the riot than did Ms. Miller; indeed, they entered the Senate area precisely as Senators were being told to evacuate. Moreover, Heneghan and Kicinski ventured all of the way to the opposite side of the Capitol building, apparently with the intent to find the Speaker of the House's office (and presumably the Speaker herself, a prime target of active January 6 rioters), where Kicinski gloated "Oh my God! This is Nancy Pelosi's office! It looks like she left in a hurry." Additionally, Heneghan took pictures of an assault on an officer at the Rotunda door. In suggesting a comparable sentence – Heneghan and Kicinski were sentenced to 20 days imprisonment, just six more days than the government recommends for Ms. Miller - the government fails to recognize the difference in aggravating factors (several in Heneghan and Kicinski's participation, none in Ms. Miller's conduct) and mitigating features (several in Ms. Miller's conduct, none in Heneghan and Kicinski's actions) of the respective cases.

The cases cited above, both from this Court and other sessions of this district, as well as the cases cited by the government itself, highlight the unreasonableness of the government's suggested sentence of 14 days' imprisonment. A Sentencing Commission-authorized sentence of 12 months' probation far better fits Ms. Miller's actual conduct and accurately balances the section 3553(a) factors in his case. Most importantly, a sentence of 12 months' probation vindicates Congress's direction that the Court "avoid unwarranted sentence disparities among

defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The Court should therefore impose it.

## CONCLUSION

For the foregoing reasons, Ms. Miller respectfully requests that the Court sentence her to a term of 12 months' probation, a sentence consistent with, and authorized by, the Sentencing Guidelines and encouraged by the Sentencing Commission. The Court should order $500 restitution to the Architect of the Capital as provided for in the parties' plea agreement. The Court should decline to impose a fine.

JULIE MILLER
By her attorney,


/s/ Timothy G. Watkins
Timothy G. Watkins
Federal Defender Office
District Of Massachusetts
Western Massachusetts Office
1 Federal St, Building 101, Suite 3W
Springfield, MA 01105

## CERTIFICATE OF SERVICE

I, Timothy G. Watkins, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 10, 2024.

/s/ Timothy G. Watkins
Timothy G. Watkins