UNITED STATES DISTRICT COURT

DISTRICT OF THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 23-00219-DLF |
| | ) | |
| JULIE MILLER | ) | |

**DEFENDANT JULIE MILLER'S RESPONSE TO THE
GOVERNMENT'S SENTENCING MEMORANDUM [D.E. 35]**

The government suggests three reasons why the Court should ignore the Sentencing

Commission's advice that "a sentence other than a sentence of imprisonment" for Zero-Point

Offenders who, like Miller, falls in Zone A of the Sentencing Table, "is generally appropriate"

U.S.S.G. § 5C1.1, *comment.* (n.10(a)). These are: (1) her and Duong's choice to go into the

Parliamentarian's office when they entered, (2) their conduct in briefly reentering the Senate

Wing after having been ushered out of the Senate fire door, and (3) her purported minimization

of what they did when later interviewed by law enforcement. *Government's Sentencing

Memorandum* [D.E. 35] ("Gov't Memo") at 7, 12, 17) None of the reasons survive much

scrutiny and so cannot support the government's recommendation of a term of incarceration.

**The pair's culpability is increased because they entered the Senate

Parliamentarian's Office, a private office space [**D.E. 35 at 7, 12]: Nothing in Miller's and

Duong's conduct indicates they knew the nature of the office they were entering, let alone

entering the office with some special intent to exploit the office's uniqueness. Indeed, quite the

opposite. It is undisputed that the pair started out the day only vaguely aware of any purpose in

going down to Washington DC at all, let alone that going into a particular office in the Capitol

would be especially fraught. *Cf. U.S. v. Jon Heneghan and Carol Kicinski*, Criminal No. 22-

00061-RBW (cited in *Gov't Memo* at 20) (couple, each sentenced to 20 days' imprisonment with

12 months' supervision to follow, had flown to Washington DC the day before the riot and

entered the Speaker's lobby where Kicinski gloated "Oh my God! This is Nancy Pelosi's office! It looks like she left in a hurry"). In fact, as Exhibit 2 to the Government's Memorandum demonstrates, prior to going inside the Senate Fire Door Miller queried Duong about why they would even go inside, to which Duong replied, "I dunno, to check it out." Notably, once inside, Miller's narration of what the pair saw within the office was tinged with bafflement, lacking any approving comment about the destruction she observed. The circumstances of the pair's entry into the office belies the government's assertion of state of mind more culpable than their wrongful trespass into the Capitol.

In short, the government's theory of increased culpability for their foray into the Parliamentarian's office lacks any foundation and does not warrant incarceration.

**The pair's culpability is increased because they entered a second time** [D.E. 35 at 7, 12]: Doubtless the second entry was a major consideration, if not the driving force, in selecting the two for prosecution. But the question before the Court is whether that decision *increases* the pair's culpability to a point where the goal of retribution can only be vindicated by a sentence of incarceration. In this regard, Ms. Miller's conduct should be considered against the backdrop of the free flow of rioters going in and out of the two entrances as well as some law enforcement officers' actions at the scene, who permitted her to take a selfie with them. *See Defendant's Sentencing Memorandum* [D.E. 36] at 2-3.

To be sure, any illusion the pair might have had that they were somehow permitted to enter the Capitol building, regardless of what others were doing or the response of some of the law enforcement officers, had evaporated once they were ushered out of the Senate Fire Door. Their decision to reenter the Capitol, even for just a few moments, was wrong and criminally so. Miller has admitted her guilt before the Court for so doing.

Like its theory that the pair's actions are deserving of increased punishment because they

knew they were going into a highly protected private office, the government's argument that the pair's decision to enter a second time warrants incarceration is unfounded.

**Miller purported minimization when later interviewed by law enforcement** [D.E. 7, 17]: Miller voluntarily submitted to an interview with two FBI Special Agents seventeen months after the events at issue. She fully and completely cooperated with agents and admitted her presence at the rally and admitted going inside the Capitol and "in someone's office." She explained that she did not witness any assaults on law enforcement officers in any capacity, a statement that is corroborated by her selfies and video recordings from the scene.

Notwithstanding this cooperation, the government seizes on a single preposition culled from the FBI-302 of the interview of Miller to conclude that Miller "lied" about and therefore minimized her decision to go inside the Capitol. *Gov't Memo* at 7. In the interview memorandum, the agent writes in summary fashion that Miller told him she was "pushed by the momentum of the crowd up *into* the Capitol building" (emphasis supplied). There is no doubt – and Miller has admitted – that she travelled to the Capitol from the rally and ended up on the Northwest Terrance where, after some time milling around in the cold outside, made the decision to go inside Capitol. But there can similarly be no doubt – and Capitol building closed circuit cameras corroborate - that at the time Miller and Duong arrived on the Capitol grounds the crowd was at its peak. Some, like Miller and Duong, who were unfamiliar with Washington DC (let alone the layout of the Capitol grounds) were indeed at the mercy of momentum of the crowd up *to* the Capitol building, which Miller has fully admitted. The government's sharp parsing of Miller's statement, which simply relies on a choice of a preposition in a summary authored by an agent seventeen months after the fact, is manifestly insufficient to support the weight the government puts on it. And it is certainly an indefensible reason to request incarceration considering Miller's subsequent admission of guilt to the Court and her acceptance

of responsibility for her actions.

\*        \*        \*

The January 6 events were indeed serious and Miller's decision to enter the Capitol grounds and building criminally irresponsible. But the unusual features of Miller's conduct leading up to and at the Capitol that day, when paired with her individual history and characteristics, do not support a sentence featuring incarceration. A sentence of 12 months' probation with agreed-up restitution satisfies the purposes of sentencing without being overly punitive while at the same time avoids unwarranted sentencing disparities among other January 6 defendants.

## CONCLUSION

For the foregoing reasons, as well those set forth in her initial Sentencing Memorandum, Miller respectfully requests that the Court sentence her to a term of 12 months' probation, order $500 restitution as provided for in the parties' plea agreement, and not impose a fine.

JULIE MILLER
By her attorney,


/s/ Timothy G. Watkins
Timothy G. Watkins
Federal Defender Office
District Of Massachusetts
Western Massachusetts Office
1 Federal St, Building 101, Suite 3W
Springfield, MA 01105

## <u>CERTIFICATE OF SERVICE</u>

I, Timothy G. Watkins, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 16, 2024.

/s/ Timothy G. Watkins
Timothy G. Watkins